UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| TIMOTHY A. SMITH and | ) | No. 15 B 36486 |
| ZORANA BOJANOVIC-SMITH, | ) | |
| | ) | |
| Debtors. | ) | Judge Goldgar |

### MEMORANDUM OPINION

Before the court for ruling is the motion of U.S. Trustee Patrick S. Layng to dismiss the chapter 7 bankruptcy case of debtors Timothy A. Smith and Zorana Bojanovic-Smith ("Timothy," "Zorana," and "the Smiths") under section 707(b)(3) of the Bankruptcy Code, 11 U.S.C. § 707(b)(3), on the ground that the case is an abuse of chapter 7. For the reasons discussed below, the U.S. Trustee is correct. The Smiths will be given an opportunity to convert this case to one under chapter 11. If they do not, the motion will be granted and the case dismissed.

### 1. Jurisdiction

The court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(a) and the district court's Internal Operating Procedure 15(a). A motion to dismiss under section 707(b) is a core proceeding under 28 U.S.C. § 157(b)(2)(O). *In re Norenberg*, 554 B.R. 480, 482-83 (Bankr. D. Mont. 2016); *In re Floyd*, 534 B.R. 729, 731 (Bankr. N.D. Ohio 2015).

### 2. Facts

The facts are taken from the Smiths' schedules and other filings with the bankruptcy court, from the parties' papers, and from the records of the Circuit Court of Cook County,

Illinois. *See Bank of Commerce & Trust Co. v. Strauss (In re Strauss)*, 523 B.R. 614, 623 n.7 (Bankr. N.D. Ill. 2014) (noting that the court can take judicial notice of records of other courts in related matters). No facts are in dispute.

Timothy works for a company called Matrex Exhibits. His monthly gross income is $15,384.62, giving him annual gross income of $184,615.44. His monthly net income (after deductions for taxes, social security, and insurance) is $9,689.46, making his annual net income $116,273.52.

The Smiths have four children. Two are under age 10. The other two are 18 and 20 and are Timothy's children from a previous marriage. Neither older child lives with the Smiths. At least one of the older children attends college, perhaps both.

The Smiths live on Oakdale Avenue in Chicago. In addition to their Oakdale residence, Timothy and Zorana separately own three condominium units. The two that Zorana owns are in Rocky River, Ohio. Timothy's unit is in Chicago. None of the condominium units produces any income – at least, the Smiths report none – and all three are in foreclosure. According to Cook County Circuit Court records, the North Sheridan unit has been sold at a judicial sale, and the sale has been confirmed.

The Smiths filed their chapter 7 petition on October 27, 2015. Against their monthly net household income of $9,689.46 shown on Schedule I, they report monthly expenses of $11,413 on Schedule J. The difference gives them negative net monthly income of $1,723.54. The negative figure results in part from expenses related to the three condominium units. The Smiths list $3,573 in monthly mortgage payments on "other property" (necessarily the condominium units, since they own no other property), as well as $1,025 in other monthly expenses related to with the units, for a total of $4,598. Schedule I, however, confirms they receive no income from

the units, and in their statement of intention they indicate the units will be surrendered.[1]

On Schedule J, the Smiths also list $2,000 in "payments of alimony, maintenance, and support." Presumably, this amount consists of college expenses for one or both of the older children: Schedule E lists a priority claim by Timothy's ex-wife of $2,000 per month for "[c]ollege expenses for children."

According to Schedule F, the Smiths have $735,463 in general unsecured debt. Of that unusually large amount, $383,843 is owed to Wells Fargo Home Mortgage, possibly the result of a deficiency judgment in a foreclosure case. None of the unsecured debt is listed as contingent or unliquidated.

In August 2016, the U.S. Trustee moved to dismiss the Smiths' case under section 707(b)(3) of the Code, 11 U.S.C. § 707(b)(3), as an abuse of chapter 7. The motion makes two principal complaints: (1) the Smiths list as expenses mortgage and other payments associated with the three condo units when those units will be surrendered; and (2) the Smiths pay $2,000 per month in college expenses for children who are adults.[2] Together, these expenses total $6,598 ($4,598 + $2,000 = $6,598). Eliminating them would reduce the Smiths' overall expenses to $4,815, leaving them with positive monthly income of $4,874 that could be paid to creditors – $58,488 each year and $292,440 over five years, 40% of the Smiths' unsecured debt.

---

[1] On their Schedule C, the Smiths claim exemptions in each property, but they value the exemptions at "0.00."

[2] The U.S. Trustee also complains that on Schedule J the Smiths list $180 per month for "entertainment." But the U.S. Trustee mentions the entertainment expense only in passing and suggests simply that it "should be reduced." The point is not incorporated into the motion's section 707(b)(3) argument and is never developed. Because the point is not developed, it is waived. *Fogel v. Linneman (In re Mission Bay Ski & Bike, Inc.)*, Nos. 07 B 20870, 08 A 55, 2009 WL 2913438, at *8 (Bankr. N.D. Ill. Sept. 9, 2009) ("Perfunctory, undeveloped, and unsupported arguments are waived . . . ."). The condo payments and the college expenses are the crux of the motion in any event.

Case 15-36486    Doc 63    Filed 12/27/16    Entered 12/27/16 10:26:41    Desc Main
Document    Page 4 of 11

The Smiths' two-page response to the U.S. Trustee's motion is confusing and largely unhelpful.[3] Although it is hard to tell, the Smiths appear to be making four points: (1) in addition to the listed expenses, Timothy incurs $180 in monthly business expenses; (2) Timothy's divorce decree (a copy of which the Smiths attach) obligates him to pay the college expenses; (3) the Smiths were still paying the condo expenses as of the petition date; and (4) as of the petition date, Zorana had "additional medical expenses." Therefore, the Smiths contend, "there was not a positive net monthly income."[4]

### 3. Discussion

The U.S. Trustee's motion is well-taken. Although the Smiths' college expenses are reasonable, their expenses for the surrendered condominium units are not. If the condo expenses alone are eliminated, the Smiths have positive income that could be used to repay creditors a

---

[3] Getting the Smiths to supply even this meager offering was difficult. Their initial response was written as if it were an answer to a complaint, admitting or denying the "allegations" of the motion. It therefore violated Local Rule 5005-3(B), which specifically prohibits this practice. The Smiths were ordered to file an amended response that complied with the rule, a response that "state[d] in narrative form [the] reasons, legal or factual, why the motion should be denied." L.R. 5005-53(B). But the amended response was again written in the form of an answer. So again an amended response was ordered. The Smiths' "second amended response" at last satisfies the local rule, in the sense that it no longer resembles an answer to a complaint. But it makes points that seem to have little to do with the motion to dismiss; it contradicts itself in places; it fails to respond to the U.S. Trustee's argument about the condo units, although that argument is central; and it contains no legal discussion at all (no legal authority is even cited). Counsel for the Smiths also did not sign the second amended response, although Bankruptcy Rule 9011(a) required him to. *See* Fed. R. Bankr. P. 9011(a). Instead, he appears to have cut and pasted the debtors' own signatures onto the response and then, for some reason, notarized them.

[4] The Smiths also assert that as of the petition date Zorana was "still unemployed." That assertion implies Zorana is employed now. But nothing in the record suggests she is (she lists no employer on Schedule I), nor does the U.S. Trustee contend she is. If Zorana were indeed employed, her income would make it more likely, not less, that the Smiths have a "positive net monthly income" and so would weigh in favor of dismissal, not against it.

-4-

substantial portion of what they are owed.

Section 707(b)(1) of the Code permits the dismissal of a chapter 7 debtor's case if granting relief "would be an abuse of the provisions of this chapter." 11 U.S.C. § 707(b)(1). Under section 707(b)(2), the court must "presume abuse" if a debtor fails the means test. 11 U.S.C. § 707(b)(2). Under section 707(b)(3), however, a court may dismiss even the case of a debtor who passes the means test (or who rebuts a presumption of abuse) if the debtor filed the petition in bad faith, or if "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3); *see In re Ross-Tousey*, 549 F.3d 1148, 1161-62 (7th Cir. 2008). The Smiths pass the means test, and the U.S. Trustee does not claim otherwise. The question, then, is whether the "totality of the circumstances" of their "financial situation" nonetheless shows that their case is an abuse of chapter 7.

The Code nowhere defines the phrase "totality of the circumstances," *see In re Grinkmeyer*, 456 B.R. 385, 389 (Bankr. N.D. Ind. 2011), and the Seventh Circuit has never addressed it. The structure of the statute, however, suggests that the test requires a subjective, holistic assessment of the debtor and his circumstances. *In re Watts*, 557 B.R. 640, 646 (Bankr. N.D. Ill. 2016); *In re Kruse*, 545 B.R. 581, 589 (Bankr. W.D. Wis. 2016); *In re Bacardi*, No. 09 B 25757, 2010 WL 54760, at *3 (Bankr. N.D. Ill. Jan. 6, 2010).

The separate requirement in section 707(b)(3)(A) that the court dismiss a case filed in "bad faith" also indicates that a chapter 7 case can be dismissed for abuse under the "totality of the circumstances" test in (B) based solely on a debtor's ability to pay his creditors and without proof, for example, of any misconduct. *Watts*, 557 B.R. at 646; *Bacardi*, 2010 WL 54760, at *3; *see also Grinkmeyer*, 456 B.R. at 389 (calling ability to pay "crucial"). Before the Code was amended in 2005, six courts of appeals had interpreted "totality of the circumstances" by

-5-

adopting open-ended, multi-factor tests. *See Bacardi*, 2010 WL 54760, at *3. With one exception, these courts agreed that the primary factor in determining what the previous version of the statute called "substantial abuse" was the debtor's ability to repay his debts. These courts also concluded that an ability to repay debts standing alone could be sufficient to warrant dismissal, although other factors might be relevant. *See id.*

Although ability to pay is "a primary and potentially sufficient consideration," it is not always the only one. *In re Johnson*, 503 B.R. 447, 451 (Bankr. N.D. Ind. 2013). Other relevant considerations may include whether the debtor has a stable source of future income; whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities; whether the petition was filed because of sudden illness, calamity, disability, or unemployment; whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay; and whether the debtor's schedules reasonably and accurately reflect his true financial condition. *Bacardi*, 2010 WL 54760, at *3; *In re Roppo*, 442 B.R. 888, 892 (Bankr. N.D. Ill. 2010).

The "totality of the circumstances" analysis is fact-intensive and performed on a case-by-case basis. *Watts*, 557 B.R. at 646; *Johnson*, 503 B.R. at 452; *Bacardi*, 2010 WL 54760, at *3. The U.S. Trustee bears the burden under section 707(b)(3) of demonstrating that the totality of the circumstances indicates abuse. *Johnson*, 503 B.R. at 451; *Grinkmeyer*, 456 B.R. at 389.

The U.S. Trustee has met his burden here – but not because of the Smiths' payment of college expenses. Educational expenses a debtor incurs for an adult child are normally not considered reasonable. *See In re Schumacher*, 495 B.R. 735, 741 (Bankr. W.D. Tex. 2013). "For better or worse, our bankruptcy system is not designed to enable debtors to fund their adult children's college education at their creditors' expense." *Id.* at 742. The opposite is true,

however, when a debtor is legally obligated to pay college expenses – under a divorce decree, for example. In that case, the obligation is considered a domestic support obligation, and payment of it is not an abuse of the bankruptcy system. *Id.*

Timothy's divorce decree requires him to pay the majority of his older children's educational expenses. With their response, the Smiths submit a copy of the judgment for dissolution of marriage from the 2008 divorce case. Paragraph E in Article VIII of the marital settlement agreement (which is expressly made part of the judgment itself) provides: "The parties shall divide all reasonable educational, extracurricular and daycare expenses for the minor children, with Husband responsible for 75 % and Wife responsible for 25%." The provision plainly requires Timothy to shoulder most of the financial burden for his children's education. The U.S. Trustee has not suggested that the $2,000 monthly college expense shown on the Smiths' schedules is more than the 75% Timothy must pay.

In his reply, the U.S. Trustee nonetheless takes the position that the expense is unreasonable. He argues that the judgment requires Timothy to pay educational expenses only while the children are "minors," and neither of the Smiths' older children is a minor. The Smiths' schedules do disclose that the two older children are 18 and 20, and the age of majority in Illinois is 18. *See* 755 ILCS 5/11-1 (2014) ("A minor is a person who has not attained the age of 18 years.").

The problem with the U.S. Trustee's argument is that it ignores how the term "minor" is used in Paragraph E. "Minor" is a noun-modifier, a noun modifying the noun that comes after it: "children." *See Chicago Manual of Style* 153 (15th ed. 2003) (noting that nouns "sometimes function as other parts of speech, such as adjectives"). "Minor children" therefore simply describes the children of the marriage as they were when the marital settlement was executed,

since they were in fact minors in 2008. The word "minor" places no time limit on Timothy's obligation to pay for the children's education, as the U.S. Trustee seems to believe. No such limit appears in the marital settlement agreement; the U.S. Trustee identifies none. Illinois law specifically authorizes a court in a divorce case to order payment of educational expenses for children "whether of minor or majority age." *See* 750 ILCS 5/513(a)(2) (2014). Timothy accordingly remains obligated to pay the college expenses of his two older children although they are over the age of the majority. Because he does, the expenses are a domestic support obligation. He can pay those expenses without abusing chapter 7.

The expenses for the three condominium units, though, are another matter. The Smiths intend to surrender each of the units. Because they are surrendering them, they no longer have to pay the expenses disclosed on Schedule I – $4,598 – in connection with the units. Money a debtor saves because he is surrendering property is relevant in determining his ability to pay creditors for purposes of section 707(b)(3). *See Grinkmeyer*, 456 B.R. at 390; *In re Perelman*, 419 B.R. 168, 178 (Bankr. E.D.N.Y. 2009); *In re Camp*, 416 B.R. 304, 311, 313 (Bankr. E.D. Tex. 2009); *In re Demesones*, 406 B.R. 711, 714 (Bankr. E.D. Va. 2008) ("A debtor's intent to surrender property . . . affects the debtor's anticipated future expenses and is a factor in the totality of the circumstances."); *In re Dowleyne*, 400 B.R. 840, 847 (Bankr. M.D. Fla. 2008) ("The debtors' expense claims for mortgage and utilities payments for the surrendered house are not allowable deductions."); *In re Maya*, 374 B.R. 750, 754 (Bankr. S.D. Cal. 2007); *In re Masella*, 373 B.R. 514, 519 (Bankr. N.D. Ohio 2007).

Even if the college expenses are taken out of the equation, the amount the Smiths will save on the surrendered units remains enough for them to pay a significant portion of their unsecured debt. Eliminating the $4,598 in expenses the Smiths will no longer have reduces their

total expenses to $6,815 and leaves them with positive net monthly income of $2,874 – $34,488 per year and $172,440 over five years, 23% of the Smiths' unsecured debt. A 23% dividend is a better recovery than general unsecured creditors typically see, at least in chapter 13 cases. Requiring the Smiths to devote their excess income to their unsecured creditors is only fair. *See Camp*, 416 B.R. at 313 ("Now that the debtors have relinquished the Florida home, there must be some room in their budget to pay their existing unsecured creditors"). Allowing the Smiths to reduce their expenses, keep almost $3,000 a month in excess income, and leave those creditors in the dust is not. It is an abuse of chapter 7.

In arguing otherwise, the Smiths seem to contend that as of the petition date they were still incurring the expenses in connection with the surrendered condo units. Therefore, they appear to believe, the expenses are properly considered in determining their ability to pay their creditors.

Not so. The Smiths might have a point if the U.S. Trustee were moving to dismiss under section 707(b)(2) based on the means test. *Compare In re Navin*, 526 B.R. 81, 84-86 (Bankr. N.D. Ga. 2015) (holding that on the means test a debtor may deduct payments to secured creditors for collateral he is surrendering), *with In re Fredman*, 471 B.R. 540, 550-55 (Bankr. S.D. Ill. 2012) (holding the opposite). But he is not. His motion is one under section 707(b)(3). The question of abuse under that section depends on "the debtor's actual circumstances, using actual income and expenses," rather than "the mechanical, cookie-cutter approach of § 707(b)(2)(A)." *Johnson*, 503 B.R. at 451. The totality of the circumstances test under section 707(b)(3) thus takes into account not only "actual current" income and expenses but also "future income and expenses." *Grinkmeyer*, 456 B.R. at 389. Because it does, courts not only may, but "indeed must, consider the debtor's financial situation at the time the motion is heard." *Roppo*,

442 B.R. at 892; *see also Dowleyne*, 400 B.R. at 843 ("Post-petition events are relevant to a totality of the circumstances analysis.") The reality of the Smiths' financial situation is that they no longer have expenses in connection with the surrendered units.

The Smiths also suggest they have additional expenses that should be considered. They claim, first, that Timothy has $180 in monthly business expenses, expenses he cannot substantiate because he pays them in cash but were "scheduled in his Bankruptcy Petition." They were not. No such expenses appear on the Smiths' Schedule I (where they ought to be listed), nor do they appear anywhere else in the schedules or statement of financial affairs. Even if they had been scheduled, the Smiths concede they cannot prove he really has the expenses. And even if the expenses could be proved, $180 would only raise the Smiths' total expenses to $6,995 and reduce their net monthly income to $2,694, not enough to make a difference.[5]

The other expense the Smiths claim is Zorana's "medical expenses along with medical prescriptions." There are two problems with this claim. One is that the Smiths fail to quantify the medical expenses, making it impossible to know whether they could materially affect the outcome on the abuse question. The other is that the Smiths' Schedule I already lists $150 in monthly medical and dental expenses. This figure can fairly be assumed to include all of the Smiths' medical expenses, including expenses for Zorana. If it does not include her expenses, the Smiths have not said. Nor have they amended Schedule I to include them, although they could have done so. *See* Fed. R. Bankr. P. 1009(a) (stating that a debtor may amend his schedules "as a matter of course at any time before the case is closed").

---

[5] In his reply, the U.S. Trustee assumes that the business expenses are the same as the entertainment expenses about which he complained briefly in his motion. Why the U.S. Trustee equates the two is unclear. The Smiths refer in their response only to "business expenses." They do not mention "entertainment."

It is worth noting, finally, that several of the other factors courts sometimes address under section 707(b)(3) weigh in favor of dismissal. As the U.S. Trustee notes, the Smiths appear to have a stable source of future income. The expenses they report can be reduced significantly (since they no longer have them) without depriving the family of food, shelter or other necessities. And nothing in the record suggests the Smiths filed their petition because of sudden illness, unemployment, or other calamity. *Bacardi*, 2010 WL 54760, at *3.

Because this case is an abuse of chapter 7, the case must therefore be dismissed unless the Smiths convert to another chapter. Based on their schedules, however, it appears the case must be converted to a case under chapter 11. Chapter 13 is available only to people whose debts, secured and unsecured, are below a certain amount. *See* 11 U.S.C. § 109(e). The current unsecured debt limit is $394,725. *See* 81 Fed. Reg. 8,748 (Feb. 22, 2016). The Smiths have $735,463 in unsecured debt, almost double the limit. Chapter 11 is accordingly their only bankruptcy option.

### 4. Conclusion

For these reasons, the motion of the U.S. Trustee to dismiss the case of Timothy A. Smith and Zorana Bojanovic-Smith will be continued to February 1, 2017, at 10:00 a.m. for further hearing. If by that date the Smiths have not filed a motion to convert this case to a case under chapter 11, the U.S. Trustee's motion will be granted and the case dismissed. A separate order will be entered consistent with this opinion.

Dated: December 27, 2016

_____
A. Benjamin Goldgar
United States Bankruptcy Judge